IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JONATHAN O. HAFEN, in his capacity as court-appointed Receiver,<br><br>Plaintiff,<br><br>v.<br><br>TERRI ANDREINI, an individual,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:20-cv-00374-TC-CMR<br><br>Judge Tena Campbell<br>Magistrate Judge Cecilia M. Romero |

Before the court is a motion for summary judgment (ECF No. 48) against Defendant Terri Andreini filed by Plaintiff Jonathan O. Hafen, the court-appointed Receiver over the assets of Rust Rare Coin, Inc., Gaylen Dean Rust, R Legacy Racing Inc., R Legacy Entertainment LLC, and R Legacy Investments LLC (collectively, the Receivership Defendants). This action is ancillary to litigation involving the Receivership Defendants. See Commodity Futures Trading Comm'n v. Rust Rare Coin, Case No. 2:18-cv-892. For the following reasons, the court grants the motion.

## BACKGROUND

The Commodity Futures Trading Commission (CFTC) and the Utah Division of Securities (UDOS) initiated a civil enforcement action against the Receivership Defendants on November 13, 2018. (Compl., ECF No. 1 in Case No. 2:18-cv-892.) The CFTC and UDOS alleged the Receivership Defendants had offered an investment opportunity (the Silver Pool), through which the Receivership Defendants claimed to generate substantial returns for investors

1

by buying and selling physical silver. (Id.) The CFTC and UDOS also alleged the Silver Pool was a Ponzi scheme, rather than a legitimate investment. (Id.)

As part of the action against the Receivership Defendants, the court appointed Jonathan O. Hafen (the Receiver) as Temporary Receiver for the assets of the Receivership Defendants. (Order, Nov. 15, 2018, ECF No. 22 in Case No. 2:18-cv-892.) On November 27, 2018, the court entered an order that, among other things, continued the Receiver's appointment until further order of the court. (Order, Nov. 27, 2018, ECF No. 54 in Case No. 2:18-cv-892.) The Receiver was charged with several tasks, including the investigation of the financial and business affairs of the Receivership Defendants and the recovery of the assets of the Receivership estate. (Id.)

On June 16, 2020, the Receiver filed the above-captioned ancillary action, seeking to recover funds transferred to Ms. Andreini and three other defendants.[1] (See Compl., ECF No. 2.) On September 26, 2025, the Receiver filed the pending Motion for Summary Judgment against Ms. Andreini. The Receiver alleges that Ms. Andreini received $635,519.99 in excess of the contributions she made to the Silver Pool and seeks to recover this amount. Ms. Andreini did not respond to the motion and the time for filing such a response has passed.

## LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that might affect the outcome of the case. See Birch v. Polaris Indus., Inc., 812 F.3d 1238, 1251 (10th Cir. 2015) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

---

[1] The Receiver previously dismissed two defendants, and the court entered default judgment against the third defendant. (See Stip. Mot. Dismiss, ECF No. 18; Not. Voluntary Dismissal, ECF No. 34; Default J., ECF No. 37.)

summary judgment."). "At the summary judgment stage, evidence need not be submitted 'in a form that would be admissible at trial.'" Argo v. Blue Cross Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). But courts should disregard statements that could not be presented at trial in any admissible form. See id.

Once the movant shows there is an absence of a genuine dispute of material fact, Celotex, 477 U.S. at 323, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[W]hile [courts] draw all reasonable inferences in favor of the non-moving party, 'an inference is unreasonable if it requires a degree of speculation and conjecture that renders [the factfinder's] findings a guess or mere possibility.'" GeoMetWatch Corp. v. Behunin, 38 F.4th 1183, 1200 (10th Cir. 2022) (quoting Pioneer Ctrs. Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fin., N.A., 858 F.3d 1324, 1334 (10th Cir. 2017)).

**ANALYSIS**

In multiple ancillary actions, this court has found that the Silver Pool operated as a Ponzi scheme. See Hafen v. Famulary, No. 2:19-cv-627, 2021 WL 229356, at *4–5 (D. Utah Jan. 22, 2021); Hafen v. Brimley, No. 2:19-cv-875, 2021 WL 1424713, at *5 (D. Utah Apr. 15, 2021); Hafen v. Evans, No. 2:19-cv-895, 2021 WL 3501658, at *3 (D. Utah Aug. 9, 2021); Hafen v. Howell, No. 2:19-cv-813, 2023 WL 2188566 (D. Utah Feb. 23, 2023). And the Tenth Circuit recently affirmed a judgment against a defendant where this court held that there was no genuine dispute of material fact about whether the Silver Pool was a Ponzi scheme. Hafen v. Howell,

121 F.4th 1191, 1200 (10th Cir. 2024) (upholding judgment against Leslie Howell but remanding for further proceedings about the appropriate value of the judgment against Gretchen Howell).

The court therefore need not repeat the relevant facts here. For the reasons stated in the Receiver's memorandum in support of his motion (see ECF No. 48 at 9–13), the court finds that the Silver Pool operated as a Ponzi scheme. See also Howell, 2023 WL 2188566, at *5–7.

Under the Utah Uniform Voidable Transactions Act (UVTA), a transfer is voidable "if the debtor made the transfer … with actual intent to hinder, delay, or defraud any creditor of the debtor." Utah Code Ann. § 25-6-202(1)(a). The UVTA allows a creditor to obtain "avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim." Id. § 25-6-303(1)(a); see also id. § 25-6-304(2)(a) ("[T]o the extent a transfer is avoidable in an action by a creditor under Subsection 25-6-303(1)(a), … the creditor may recover judgment for the value of the asset transferred."). "In the context of a Ponzi scheme … 'the mere existence of a Ponzi scheme is sufficient to establish a defendant's actual intent to defraud.'" Hafen v. Brimley, 2021 WL 1424713, at *4 (quoting Klein v. Nelson, No. 13-cv-497, 2015 WL 4545748, at *2 (D. Utah July 28, 2015)); see also Wing v. Dockstader, 482 F. App'x 361, 363 (10th Cir. 2012). "[A] receiver of an entity which was used to perpetrate a Ponzi scheme has standing to recover fraudulent transfers as though the receiver were a creditor of the scheme." Brimley, 2021 WL 1424713, at *4 (quoting Dockstader, 482 F. App'x at 363).

Where a Receiver "establishes that the debtor operated as a Ponzi scheme, all transfers by the debtor entity are presumptively fraudulent and are subject to avoidance." Id. at *5; see also Howell, 121 F.4th at 1200 (clarifying that Tenth Circuit precedent concerning the Ponzi presumption in cases involving Utah's Uniform Fraudulent Transfer Act extends to the UVTA). "The recipient of funds from the Ponzi scheme then bears the burden of demonstrating that

4

(1) the funds were received in good faith and (2) in exchange for reasonably equivalent value." Brimley, 2021 WL 1424713, at *4 (citing Klein v. King & King & Jones, P.C., No. 2:12-cv-51, 2013 WL 4498831, at *2 (D. Utah Aug. 19, 2013)). "[A]n investor in a Ponzi scheme does not exchange reasonably equivalent value for payments which exceed the investor's investments." Miller v. Wulf, 84 F. Supp. 3d 1266, 1274 (D. Utah 2015). And because the Silver Pool operated as a Ponzi scheme, "amounts received by investors in excess of their principal investment—i.e., an investor's 'profits' from the scheme—[were] not received in exchange for reasonably equivalent value and must be returned to the Receivership Estate." Brimley, 2021 WL 1424713, at *5.

Accordingly, the Receiver need only establish that Ms. Andreini received distributions in excess of her initial investment to the Silver Pool and calculate the amount of that difference. The Receiver supports his computation of that amount with a spreadsheet summarizing the investments made by Ms. Andreini and the payments made to Ms. Andreini. (Cash Receipts & Disbursement Analysis, ECF No. 48-4 at 9–10.) The court has carefully reviewed this exhibit and agrees with the Receiver's conclusions—namely, that Ms. Andreini invested no more than $281,205.01[2] into the Silver Pool and received disbursements from the Receivership Defendants totaling $916,725 from April 2013 to August 9, 2018. (Id.) These amounts are also supported by the Receiver's Requests for Admissions, which are deemed admitted due to Ms. Andreini's failure to respond. Fed. R. Civ. P. 36(a)(3); (Discovery Requests, ECF No. 48-4 at 5–6). The court therefore agrees with the Receiver that Ms. Andreini received $635,519.99 in excess of her

---

[2] The spreadsheet provided by the Receiver only shows investments of $159,926.76. (See ECF No. 48-4 at 9.) But the Receiver gives Ms. Andreini credit for investments of $281,205.01, as this is the amount that is deemed admitted due to Ms. Andreini's failure to respond to the Receiver's Requests for Admissions. (See id. at 5.) The court agrees that it is reasonable to give Ms. Andreini credit for the higher value of investments.

investments.

The Receiver requests prejudgment interest on this amount. The court agrees with the Receiver that prejudgment interest from the last date a distribution could have been made—August 9, 2018—is appropriate here. The Tenth Circuit has previously upheld the award of prejudgment interest at a rate of 5% per annum to a receiver for a fraudulent transfer claim because prejudgment interest "compensates for the loss of use of the money" and "[u]nder fairness and equity principles, prejudgment interest was proper." Wing v. Gillis, 525 F. App'x 795, 801 (10th Cir. 2013); see also Miller v. Kelley, No. 1:12-cv-56, 2014 WL 5437023, at *7 (D. Utah Oct. 27, 2014). Moreover, the Tenth Circuit has recently upheld this court's similar award of prejudgment interest at a 5% interest rate in another action ancillary to the Rust Rare Coin litigation. Howell, 121 F.4th at 1205.

The court therefore awards the Receiver prejudgment interest at the rate of 5% per annum from August 9, 2018, the last date Ms. Andreini received a transfer from Rust Rare Coin. That amount equals $229,483.66. The total judgment against Mr. Nichols is therefore $865,003.65. Post-judgment interest is also recoverable under 28 U.S.C. § 1961(a).

## ORDER

For the foregoing reasons, the court ORDERS as follows:

1. The Receiver's Motion for Summary Judgment (ECF No. 48) is GRANTED.

2. The court awards the Receiver $865,003.65 against Defendant Terri Andreini, an amount that represents $635,519.99 in fraudulent and voidable transfers and $229,483.66 in prejudgment interest.

3. The court's judgment shall bear interest calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as

published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. See 28 U.S.C. § 1961(a).

    4.    Because there are no remaining claims pending against any defendant in this matter, the court directs the Clerk of Court to close this action.

DATED this 27th day of October, 2025.

BY THE COURT:

_/s/ Tena Campbell_
Tena Campbell
United States District Judge